ALBERT E. SCHWABACHER, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 100864, 100865, 101268, 101269. Promulgated March 27, 1941.

*John C. Altman*, *Esq.*, and *Willard L. Ellis*, *Esq.*, for the petitioners.

*Arthur L. Murray*, *Esq.*, for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith: James H. Schwabacher; May K. Schwabacher; and Sophie D. Schwabacher.

## OPINION.

STERNHAGEN: 1. The petitioners claim that in determining the partnership income a deduction is required of the $25,000 paid in 1936 in settlement of the litigation to compel the transfer of Ehrich's stock exchange membership and the $8,540.08 attorneys' fees. Both parties agree that the same considerations affect the question of deduction of each of the two items.

There is no conflict in the evidence and no dispute as to the facts, although many of them were not stipulated and were introduced by testimony.

The petitioners' contention must be rejected. The payment was an additional cost of the membership in the Stock Exchange which was not an expense of carrying on the trade or business but an investment in one of the essential assets of the business, the use of which was to be felt steadily in the firm's stock exchange transactions for an indefinite period. The technical question of ownership of the seat and of the right of the partnership to be a member of the exchange is of no significance in this controversy. The 1936 payments were made for the same purpose as the earlier payment to Ehrich, i. e., to secure the use of a stock exchange membership. Essentially the rationale of the 1936 payments is not affected by whether the estate's refusal to execute the transfer papers was unethical, as it apparently was. Even though it were a "hold up" to which petitioners were willing to yield, the price was not an ordinary and necessary expense of doing business, but was a means of clearing the way for getting the use of what it had bought from Ehrich. It is no more deductible than the payments in *Moynier* v. *Welch*, 97 Fed. (2d) 471; *Murphy Oil Co.* v. *Burnet*, 55 Fed. (2d) 17; *Morgan Jones Estate*, 43 B. T. A. 691.

The deduction was properly disallowed.

2. The Commissioner would tax the entire gain to Albert E. Schwabacher and May K. Schwabacher which it is agreed they realized in the exchange by them of their debentures in the old Theatre Equipment company for shares in the new company and warrants to buy Twentieth Century Fox Film shares. The petitioners demand that under section 112 (c) (1), Revenue Act of 1936, the gain is to be recognized only to the extent of the agreed value of the warrants. It is not disputed that they held the debentures more than two and less than five years and that only 60 percent of the recognizable gain is to be taxed. The question upon which there is disagreement is whether there was a "reorganization" under section 112 (g) (1) (C).[4]

There is no essential difference here from the "reorganizations" under the same section which existed in *Commissioner* v. *Kitselman*, 89 Fed. (2d) 458; certiorari denied, 302 U. S. 709; *Alabama Asphaltic Limestone Co.*, 41 B. T. A. 324; *James Q. Newton Trust*, 42 B. T. A.

---

[4] SEC. 112. RECOGNITION OF GAIN OR LOSS.

\*     \*     \*     \*     \*     \*     \*

(g) DEFINITION OF REORGANIZATION.—As used in this section and section 113—

(1) The term "reorganization" means \* \* \* (C) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred.

473 (on review C. C. A., 10th Cir.). The doctrine of those cases is that the term "stockholders" in subdivision (C) is not to be literally applied only to holders of shares but is to be interpreted broadly enough to include bondholders and other creditors who, because of the excess of liabilities over assets of the corporation, have become "pretty much the corporation" and are like stockholders in that they have a beneficial, if not a technical, ownership of the corporation. In this view, the "stockholders" were, after the transfer of the old company's assets to the new, the owners of more than 80 percent of the combined voting power of the stock of the new corporation. Upon the authority of those decisions, the Commissioner's determination upon the point must be reversed and the recognition of taxable gain limited to the agreed value of the warrants to buy Twentieth Century Fox Film shares.

*Decisions will be entered under Rule, 50.*